UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:20-cv-00475

———

**Michael Fields et al.,**
*Plaintiffs,*
v.
**Tommy Brown et al.,**
*Defendants.*

———

## ORDER

Defendants removed this personal-injury suit from the County Court at Law of Panola County, Texas. Doc. 1. Now before the court is plaintiffs' motion to remand to state court (Doc. 8). For the reasons set forth below, that motion is **denied**.

### Background

Plaintiffs Michael Fields, Vickie Grant, Jessica Matlock, and Kelly Reese are former employees of Tyson Food's meatpacking plant in Carthage, Texas. Doc. 7 ¶ 13. On April 2, 2020, Governor Greg Abbott enacted a stay-at-home order in response to the COVID-19 pandemic. *Id*. ¶ 14. But according to plaintiffs, they were still "required to continue working at the Tyson meatpacking plant in Carthage, Texas." *Id*.

While working at the Carthage meatpacking plant during the pandemic, plaintiffs allege that they—along with nearly 7,100 other Tyson employees—were exposed to and contracted COVID-19. *Id*. ¶¶16-17. Asserting claims for negligence and gross negligence, plaintiffs brought this lawsuit against Tyson Foods, Inc., and Tommy Brown, Micah Fenton, and Felicia Alexander, individual employees at Tyson who bore the responsibility to administer "policies or procedures that would help prevent the spread of COVID-19" at the plant. *Id*. ¶ 16, 20-32. Specifically, plaintiffs claim that defendants failed to "provide adequate precautions or protections to help

protect [their] employees from COVID-19," including by not providing proper personal protective equipment or implementing social-distancing measures. *Id*. ¶ 15, 21.

On August 28, 2020, defendants removed to this court from the County Court at Law of Panola County, Texas. Doc. 1. In their notice of removal, defendants alleged two bases for federal jurisdiction in this case: the federal officer removal statute, *see* 28 U.S.C. § 1442, and federal question jurisdiction under 28 U.S.C. § 1331(a)(1). *Id*. Plaintiffs timely filed a motion to remand. Doc. 8. Defendants responded, furnishing the additional argument that plaintiffs waived their right to seek remand in this case because they amended their complaint to add Tyson Foods, Inc. as a defendant. Doc. 10.

### Standards and analysis

As a threshold matter, plaintiffs did not waive their right to seek remand in this case. On September 25, 2020—the same day that they filed their motion to remand—plaintiffs filed an amended complaint to add Tyson Foods, Inc. to this lawsuit. Doc. 7. Defendants briefly argue that this amounts to a waiver of the right to seek remand, relying primarily on the Fifth Circuit's decision in *Johnson v. Odeco Oil and Gas Co*. Doc. 10 at 2-3 (relying on 864 F.2d 40 (5th Cir. 1989)).

But *Johnson* is inapposite to this case. In *Johnson*, the Fifth Circuit held that the plaintiff had waived the right to remand because he both "participate[d] in the conduct of the action" by taking part in discovery for nearly a year and "fail[ed] to object promptly to removal" because he filed his motion to remand after defendants filed a motion for summary judgment. *Johnson*, 864 F.2d at 42; *see also Harris v. Edward Hyman Co.*, 664 F.2d 943, 944 (5th Cir. 1981) (holding that plaintiff waived her right to seek remand because she "fail[ed] to assert promptly her objections to the defects in the petition and . . . proceed[ed] with discovery"). Under Fifth Circuit law, whether a plaintiff has waived her right to remand depends on "the extent of a plaintiff's conduct in the federal

- 2 -

proceedings." *Johnson*, 864 F.2d at 42 (citing *Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 118 (5th Cir. 1987)).

Here, plaintiffs have not participated in the proceedings to the extent that their right to seek remand has been waived. Unlike the plaintiff in *Johnson*, plaintiffs here have not taken part in any discovery and have not otherwise acquiesced to the court's jurisdiction. And their motion to remand was promptly filed within the thirty-day window after removal. Defendants' waiver argument is meritless.

Having reviewed the parties' remaining arguments, the court finds that the federal officer removal statute confers jurisdiction in this case. Ordinarily, the well-pleaded complaint rule bars defendants from removing to federal court when the only jurisdictional hook is a federal defense. *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). But the federal officer removal statute carves out an exception to the well-pleaded complaint rule, "permit[ting] an officer to remove a case even if no federal question is raised . . . so long as the officer asserts a federal defense in the response." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020). Unlike typical motions to remand, removal under § 1442(a) "should not be frustrated by a narrow, grudging interpretation" of the statute. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Rather, § 1442(a) is written broadly "to cover all cases where federal officers can raise a colorable defense" and "to have such defenses litigated in the federal courts." *Id.* at 406-07.

Section 1442 allows "[a]ny officer of the United States . . . or person acting under him" to remove a case from state court "for any act under color of such office." 28 U.S.C. § 1442(a). The right to remove therefore extends to defendants who are acting under the direction of a federal officer. Such removal requires the defendant to show that (1) it is a person for purposes of the statute; (2) it was "acting under" a federal officer's directions; (3) there was a connection or association between

those directions and the plaintiff's claims; and (4) it can assert a colorable federal defense. *Id*. at 296.

As with any motion to remand, "it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." *Winters*, 149 F.3d at 397. Because the parties here do not dispute that defendants are "persons" under the federal officer removal statute, the court will only address the remaining three prongs.

First, defendants must establish that they were "acting under" the directions of a federal officer. Under the federal officer removal statute, a "private person's acting under must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. 142, 152 (2007). "Although the words 'acting under' are undoubtedly broad, the Supreme Court has clarified that they must refer to a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office." *Zeringue v. Crane Company*, 846 F.3d 785, 792 (5th Cir. 2017).

Defendants' notice of removal points to two possible sources of direction from a federal officer: designation as critical infrastructure, and President Trump's April 28, 2020 executive order.

Defendants first claim that, because Tyson Foods was designated as "critical infrastructure" by the federal government, they were acting under a federal officer's directions. The Patriot Act empowers the federal government to designate particular industries as "critical infrastructure," meaning that they "provide essential services that underpin American society." Doc. 10-4 at 2.  When a national emergency was declared in response to the COVID-19 pandemic on March 13, 2020, Tyson Foods, along with other components of the Food and Agriculture Sector, was designated as critical infrastructure. Doc. 10-1 ¶ 8.

As defendants note, after this designation, Tyson Foods interacted with multiple government agencies, namely by

- 4 -

being "in close contact with officials at the U.S. Department of Homeland Security and the U.S. Department of Agriculture regarding continued operations." Doc. 10 at 11. Tyson Foods also participated in a meeting between President Trump and other food industry executives "to discuss the stability of the supply chain." *Id*.

Part of the collaboration between Tyson Foods and the federal government involved it working directly with the United States Food Safety and Inspection Service (FSIS). *Id*. at 7. Tyson Foods communicated regularly, albeit informally, with FSIS Administrator Paul Kiecker. Doc. 10-1 ¶ 16. The FSIS had employees staffed onsite at meatpacking plants—including those operated by Tyson Foods—to ensure that they maintained operations. *Id*. Moreover, "Congress allocated additional funding to the FSIS to help maintain FSIS presence at facilities so that operations could continue." Doc. 10-1 ¶ 18. Finally, Tyson Foods worked with both the Department of Agriculture and the Federal Emergency Management Agency to receive personal protective equipment for its employees. *Id*. ¶ 14.

Plaintiffs contend that the critical-infrastructure designation is insufficient to conclude that defendants were "acting under" the directions of a federal officer. According to plaintiffs, all that defendants' evidence proves is "that they communicated with federal regulators and that Tyson Foods was subject to federal regulation." Doc. 13 ¶ 6-7. Plaintiffs specifically cite to *Watson v. Phillip Morris*, where the Supreme Court held that private entities that are merely subject to government regulation cannot remove under the federal officer removal statute. *See Watson*, 551 U.S. at 152 ("In our view, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law.").

But unlike *Watson*, the defendants here exhibited "an effort to help assist, or carry out, the duties and tasks of the federal

superior." *See id*. Defendants did so by working directly with the Department of Agriculture and the FSIS to guarantee that there was an adequate food supply.

Other district courts in this circuit have recognized that "[t]he 'acting under' element requires a close relationship between the contractor and government involving detailed regulation, monitoring, and supervision." *Benson v. Russell's Cuthand Creek Ranch, Ltd.*, 183 F. Supp. 3d 795, 802-03 (E.D. Tex. 2016) (citing *Watson*, 551 U.S. at 153). Both the Department of Agriculture and the FSIS closely monitored Tyson Food's meatpacking plants, staffing some employees onsite during the pandemic. Doc. 10-1 ¶ 16. Congress even allocated additional funding to FSIS to ensure that they had the resources to adequately supervise meatpacking plants like the one at issue in this case. *Id*. ¶ 18.

Accordingly, the court now finds that, based on the critical-infrastructure designation, defendants were "acting under" the directions of federal officials when the federal government announced a national emergency on March 13, 2021.[1]

Second, defendants must show a connection or association between the federal officer's directions and plaintiffs' claims. The parties dispute the applicable standard for this prong. Plaintiffs, citing the Fifth Circuit's decision in *Winters v. Diamond Shamrock Chemical Company*, argue that there must be a "causal nexus" between plaintiffs' claims and the directions that defendants received from a federal officer. 149 F.3d 387 (5th Cir. 1998).

But that standard no longer governs. In 2020, the Fifth Circuit, sitting en banc, reinterpreted the 2011 statutory

---

[1] The parties also contest whether President Trump's April 28, 2020 executive order confers jurisdiction under the federal officer removal statute. But because the court has now held that defendants were acting under the direction of multiple federal agencies since March 13, 2020, it need not also determine whether President Trump's executive order amounted to directions from a federal officer.

amendments to § 1442 in *Latiolais v. Huntington Ingalls. Inc*. Those amendments "alter[ed] the requirement that a removable case be 'for' any act under color of federal office and permitt[ed] removability of a case 'for *or relating to*' such acts." *Latiolais*, 951 F.3d at 291. That addition, the *Latiolais* court held, "broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id*. at 292.

The court now agrees that the more relaxed standard from *Latiolais* controls, and defendants need only prove that there is a connection or association between the federal officer's directions and the alleged conduct.

Such a connection exists here. Plaintiffs' complaint alleges that defendants failed to create adequate safety precautions in light of the pandemic by not administering personal protective equipment or implementing social-distancing measures. Doc. 7 ¶ 15, 21. That failure, plaintiffs contend, led to their contracting COVID-19. *Id*. The purported act under color of federal authority is the decision to maintain operations despite the pandemic. Naturally, the choice of what safety precautions should be taken—such as whether personal protective equipment should be provided or what social-distancing measures should be adopted—connects to the broader decision to keep the plant open during the pandemic in the first place. *See* Doc. 10 at 14.

Finally, defendants must assert a colorable federal defense. It is not necessary for a defendant "virtually to win his case before he can have it removed." *Jefferson Cty., AL v. Acker*, 527 U.S. 423, 431 (1999). Rather, "an asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Latiolais*, 951 F.3d at 297 (cleaned up). "Certainly, if a defense if plausible, it is colorable." *Id*.

In their notice of removal, defendants raised two federal defenses. First, they argue that the Poultry Products

Inspection Act expressly preempts plaintiffs' state-law claims. Second, they claim that there is conflict preemption between plaintiffs' claims and President Trump's April 28 executive order paired with the Defense Production Act.

The Poultry Products Inspection Act (PPIA) contains an express preemption clause that prohibits states or territories from imposing

> [r]equirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter . . . ."

21 U.S.C. § 467e. In its motion, plaintiffs argue that the PPIA does not provide a colorable federal defense because their claims do not fall within the scope of the preemption clause. Plaintiffs point specifically to a later portion of the preemption clause, which states:

> Marking, labeling, packaging, or ingredient requirements . . . in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia . . . ."

*Id*. In plaintiffs' view, the PPIA only expressly preempts state laws that cover marking, labeling, packaging, or ingredients, so its common-law tort claims would not be included.

However, as defendants note, plaintiffs here are only cherry-picking one portion of the preemption clause. They ostensibly ignore the opening of the clause, which prohibits state-law requirements "with respect to premises, facilities and operations." *See id*.

Moreover, the Supreme Court has repeatedly held "that a provision pre-empting state 'requirements' pre-empt[s] common-law duties." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008); *see Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 444 (2005) ("[T]he term 'requirements' . . . reaches beyond positive enactments, such as statutes and regulations, to embrace

- 8 -

common-law duties."). These holdings, at the very least, render defendants' preemption defense under the PPIA plausible. To be sure, this does not reflect the court's ultimate opinion on the merits of this defense. But the court need not make such a determination at this stage of the proceedings; all that is necessary is that a federal defense is colorable.

Plaintiffs alternatively argue that "because the PPIA does not contain a private right of action" for plaintiffs' claims, preemption is improper. Doc. 8 at 16. But plaintiffs here rely on *Rogers v. Tyson Foods*, a case that requires a private right of action for *complete* preemption, which is distinct from the express preemption theory that defendants advance. *See Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 790 (7th Cir. 2002) ("[C]omplete preemption can only exist where, *inter alia*, the federal statute provides a private right of action."). Accordingly, the court now finds that defendants have put forth a colorable federal defense under the PPIA, thereby satisfying the federal officer removal test laid out in *Latiolais*.[2]

Because defendants have established federal jurisdiction under the federal officer removal statute, it is not necessary to determine whether there is federal question jurisdiction as well.

### Conclusion

For the foregoing reasons, plaintiffs' motion to remand (Doc. 8) is **denied**.


*So ordered by the court on February 11, 2021.*


_____
J. CAMPBELL BARKER
United States District Judge

---

[2] Given that the PPIA's express preemption clause provides a colorable federal defense under § 1442, there is no need to address whether defendants' conflict preemption theory under President Trump's April 28, 2020 executive order is also colorable.