UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:20-cv-00475

**Michael Fields et al.,**
*Plaintiffs,*

v.

**Tyson Foods, Inc.,**
*Defendant.*

### OPINION AND ORDER

Before the court are defendant's motion to dismiss (Doc. 17) and supplemental motion to dismiss (Doc. 29). For the reasons set forth below, those motions are granted.

### Background

Plaintiffs complain that their employer, Tyson Foods, directed them to come back to work after Texas and other States issued stay-at-home orders in response to COVID-19. Doc. 7 ¶ 14. Plaintiffs allege that Tyson failed to take adequate safety measures—including by not providing personal protective equipment to its employees and not implementing social-distancing guidelines—which caused them to contract COVID-19. *Id.* ¶¶ 15, 16, 21. Plaintiffs bring causes of action for negligence and gross negligence, claiming that Tyson failed to satisfy a duty of care to keep its premises in a reasonably safe condition and failed to exercise ordinary care to reduce or eliminate the risk of its employees being exposed to COVID-19. *Id.* ¶¶ 21, 28, 29, 31.

The meat-packing facility at which plaintiffs worked is subject to federal regulation under the Poultry Products Inspection Act of 1957 ("PPIA"). 21 U.S.C. §§ 451 *et seq.*; *see also* FSIS Meat, Poultry and Egg Product Inspection Directory at 517 (Sept. 6, 2021) (identifying Tyson's facility in Carthage, Texas, as establishment number P7044), https://www.fsis.usda.gov/sites/default/files/media_file/2021-09/MPI_Directory_by_Establishm

ent_Number.pdf. The United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") promulgates the relevant regulations. 9 C.F.R. § 300.2(a), (b)(2). The PPIA requires the FSIS to inspect domesticated birds when slaughtered and processed into products for human consumption. The PPIA also requires the inspection of plant facilities to ensure sanitary conditions, provide for infectious-disease control, and regulate personal protective equipment. *See id*. §§ 416.5(c), 381.36(c), 381.45, 416.5(c).

On December 14, 2020, Tyson filed a motion to dismiss plaintiffs' first amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 17. Plaintiffs timely responded (Doc. 18), and Tyson filed a reply. Doc. 19. On June 28, 2021, Tyson filed a supplemental motion to dismiss, asserting that the recently passed Pandemic Liability Protection Act ("PLPA") was a new ground for dismissal not available to Tyson at the time of its first motion to dismiss. Doc. 29. The PLPA, enacted on June 14, 2021, provided retroactive protections to businesses against damages lawsuits alleging exposure to COVID-19. Plaintiffs timely responded (Doc. 31), and Tyson filed a reply. Doc. 32. Both motions are now ripe for resolution.

## Discussion

Having construed the facts in the light most favorable to plaintiffs, the court holds that their operative complaint fails to state a claim against Tyson for which relief may be granted because the PPIA's express-preemption clause and the PLPA each independently foreclose plaintiffs' claims.

**A. Poultry Products Inspection Act (PPIA)**

The PPIA contains an express-preemption clause: "Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State." 21 U.S.C. § 467e. Thus, regulations promulgated by the FSIS—the body responsible for administering the PPIA and regulating the processing and distribution of poultry products (including regulations regarding infectious disease)—

override state requirements that are different than or in addition to those regulations.

That express-preemption clause is essentially the same as the nearly identical provision in the Federal Meat Inspection Act ("FMIA"). Both contain "substantially identical preemption language." *See Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 996 (2d Cir. 1985); 21 U.S.C. § 678 (prohibiting states from imposing "[r]equirements with respect to premises, facilities and operations of any establishment . . . which are in addition to, or different than those made under [the FMIA]."). Indeed, the FMIA and PPIA are two sides of the same coin. Where the FMIA is responsible for regulating certain aspects of slaughterhouses for beef and pork, the PPIA covers the same standards for poultry processing. Both statutes are administered by the FSIS.

The Supreme Court held in *National Meat Association v. Harris* that "[t]he FMIA's preemption clause sweeps widely," as it "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act and concern a slaughterhouse's facilities and operations." 565 U.S. 452, 459–60 (2012). The PPIA's preemption clause has a similarly broad reach.

Contrary to plaintiffs' argument, PPIA preemption extends to state-law tort claims. The Supreme Court has frequently recognized "that a provision pre-empting state 'requirements' preempt[s] common-law duties." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008); *see Bates v. Dow Agrosciences*, *LLC*, 544 U.S. 431, 444 (2005) ("[T]he term 'requirements' . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties."). These general common law duties include "negligence, strict-liability, and implied-warranty claims" in the context of personal injuries. *Id.* at 327. So, if the state requirements fall "within the scope" of the PPIA, plaintiffs' common law tort claims (even involving personal injuries) are foreclosed by the PPIA's express-preemption clause.

The state-law tort claims here fall "within the scope of" the PPIA—and are therefore preempted. The crux of plaintiffs'

claims is that Tyson failed to impose adequate safety measures to reduce the spread of COVID-19 in its Carthage, Texas, facility. But the FSIS has promulgated, and has authority to promulgate, a number of regulations that directly address the spread of disease.

For example, FSIS has promulgated many federal regulations concerning infectious diseases like the "disease control" regulation requiring that "any person who has or appears to have an infectious disease . . . must be excluded from any operations which could result in product adulteration and the creation of insanitary conditions until the condition is corrected." 9 C.F.R. § 416.5(c). The FSIS also has regulations requiring facilities to "monitor and document any work-related conditions of establishment workers," to "encourage early reporting of symptoms of injuries and illnesses," to provide "[n]otification to employees of the nature and early symptoms of occupational illnesses and injuries . . . including by posting in a conspicuous place . . . a copy of the FSIS/OSHA poster encouraging reporting and describing reportable signs and symptoms." *Id*. § 381.45. FSIS also promulgates regulations regarding employee clothing hygiene, requiring: "Aprons, frocks, and other outer clothing worn by persons who handle product must be of material that is disposable or readily cleaned. Clean garments must be worn at the start of each working day and garments must be changed during the day as often as necessary to prevent adulteration of product and the creation of insanitary conditions." *Id*. § 416.5(b). The FSIS also promulgates detailed regulations regarding sanitation and hygiene procedures, such as that "hand rinsing facilities must have a continuous flow of water." *Id*. § 381.36(c).

The duty of care alleged in plaintiffs' state-law tort claims would require Tyson to utilize garments or clothing in addition to those required by § 416.5(b). Plaintiffs' claimed duty would also impose additional or different requirements as those for monitoring for the spread of disease as specified in §§ 416.5(c) and 381.45. Plaintiffs' tort claims would therefore impose requirements "in addition to" those authorized and promulgated under the PPIA and are preempted by that federal law.

### B. Pandemic Liability Protection Act (PLPA)

The PLPA generally shields corporations from liability if an individual suffered "injury or death caused by exposing [the] individual to a pandemic disease during a pandemic emergency." Tex. Civ. Prac. & Rem. Code § 148.003. Individuals may seek damages only if they can establish that:

(1) the [corporation] who exposed the individual:

   (A) knowingly failed to warn the individual of or remediate a condition that the person knew was likely to result in the exposure of an individual to the disease, provided that the [corporation]:

   (i) had control over the condition;

   (ii) knew that the individual was more likely than not to come into contact with the condition; and

   (iii) had a reasonable opportunity and ability to remediate the condition or warn the individual of the condition before the individual came into contact with the condition; or

   (B) knowingly failed to implement or comply with government-promulgated standards, guidance, or protocols intended to lower the likelihood of exposure to the disease that were applicable to the [corporation], provided that:

   (i) the person had a reasonable opportunity and ability to implement or comply with the standards, guidance, or protocols;

   (ii) the person refused to implement or comply with or acted with flagrant disregard of the standards, guidance, or protocols; and

   (iii) the government-promulgated standards, guidance, or protocols that the person failed to implement or comply with did not, on the date that the individual was exposed to the disease, conflict with

> > government-promulgated standards, guidance, or protocols that the person implemented or complied with; and
>
> (2) reliable scientific evidence shows that the failure to warn the individual of the condition, remediate the condition, or implement or comply with the government-promulgated standards, guidance, or protocols was the cause in fact of the individual contracting the disease. *Id*.

Hence, to survive dismissal, plaintiffs must plausibly allege that Tyson either (a) knowingly failed to warn them or remedy some condition at the facility that Tyson knew would expose plaintiffs to COVID-19 or (b) knowingly flouted government-promulgated COVID-19 guidance that was applicable to the corporation. Additionally, the complaint must further allege that "reliable scientific evidence" shows that Tyson's conduct was the cause-in-fact of plaintiffs' contracting COVID-19. The complaint, however, does not meet any of these requirements. Plaintiffs fail to adequately allege all the requirements to show the requisite "knowing failures" by Tyson.

The same issues were discussed in a substantially similar case in the Northern District of Texas, in which the court gave examples of how the plaintiffs' complaint failed to allege facts that meet the PLPA standards. First, the plaintiffs failed to allege that "reliable scientific evidence" showed that the defendant was the cause-in-fact of plaintiffs' contracting COVID-19. Second, the plaintiffs did not allege the dates they contracted COVID-19, so it was impossible for the court to determine if defendants had a "reasonable opportunity" to implement government-promulgated standards or warn the plaintiffs of dangerous infectious conditions. *Wazelle v. Tyson Foods, Inc.*, No. 2:20-CV-203-Z (N.D. Tex. Aug. 20, 2021).

The same deficiencies are present here. Plaintiffs fail the causation prong because they provide no "reliable scientific evidence" that shows that Tyson was the cause-in-fact of plaintiffs' contracting COVID-19. Plaintiffs make only conclusory statements that they contracted COVID-19 because of unsafe working

conditions, without alleging how, when, or why they contracted COVID-19 or accounting for other possible sources of infection.

Plaintiffs also fail to allege the dates on which they allegedly contracted COVID-19. The court agrees that, without such dates, it is impossible to determine if the defendants had a "reasonable opportunity" to implement government-promulgated standards or warn the plaintiffs of dangerous infectious conditions. Plaintiffs have not alleged facts sufficient to satisfy the PLPA.

### C. Any attempt to amend is futile

Plaintiff requests the opportunity to amend their complaint to cure any deficiencies found therein. Although a court "should freely give leave [to amend] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "[i]t is within the district court's discretion to deny a motion to amend if it is futile," *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Id*. Plaintiffs argue that an amendment might allow them to plead facts that satisfy the PLPA, which was enacted after the complaint. Even if that is so, however, PPIA preemption would still independently foreclose the claims. Thus, the envisioned amendment would be futile.

### Conclusion

For the reasons given above, defendant's motions to dismiss are granted. A final judgment will issue forthwith.

*So ordered by the court on September 22, 2021.*

J. CAMPBELL BARKER
United States District Judge